UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JANAE MILLER** and **TYLOR ARMSTRONG,** on behalf of themselves and others similarly situated,

    **Plaintiff,**

 v.

**HG OHIO EMPLOYEE HOLDING CORP.,** *et al.*

    **Defendants.**

Case No. 2:21-cv-3978
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

  This matter arises on Named Plaintiff Janae Miller and Named Plaintiff Tylor Armstrong's (collectively, "Plaintiffs") Pre-Discovery Motion for Conditional Class Certification and Court-Supervised Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"). (ECF No. 20) (hereinafter the "Motion" or "Motion for Conditional Certification").  Defendants HG Ohio Employee Holding Corporation, HG Ohio Operations LLC (collectively, "HG"), and Holland Management HZ, Inc. ("Holland") (collectively, "Defendants") oppose conditional certification, and, in the alternative, seek to narrow the scope of Plaintiffs' putative FLSA collective. (ECF Nos. 21, 22.)

  Subject to the condition of this Opinion and Order, and for the reasons stated herein, the Court **GRANTS** Plaintiffs' Motion for Conditional Certification.  (ECF No. 20.)

1

# I.

### A. The Parties

HG is the alleged owner and operator of at least twelve Ohio-based senior living communities (the "Facilities"), including the Brookview Healthcare Center in Defiance, Ohio (the "Brookview Center"); the Gardens at Paulding in Paulding, Ohio ("the Gardens"); Heatherdowns Rehab & Residential Center ("Heatherdowns") in Toledo, Ohio; and the McCrea Manor Nursing & Rehab Center ("McCrea Manor") in Alliance, Ohio.[1] (First Amended Complaint ("FAC"), ECF No. 10 at ¶ 18 n. 6.) Holland allegedly serves as the Facilities' property manager. (*Id.* at ¶ 20.) Together, Plaintiffs contend the two entities form a "single integrated enterprise"—or, alternatively, jointly employ the Facilities' employees. (*Id.* at ¶¶ 21, 23, 26.)

Plaintiffs, in addition to seven individuals who have opted in to their putative FLSA collective,[2] are all current or former nursing employees of the Facilities. Plaintiff Armstrong, specifically, worked as an hourly "pool nurse" at the Brookview Center and the Gardens from April 2019 to April 2021, while Plaintiff Miller worked at the Brookview Center as a State Tested Nursing Assistant from August 2017 to January 2021. (Declaration of Tylor Armstrong, ECF No. 20-2 at ¶¶ 4-5); (Declaration of Janae Miller, ECF No. 20-2 at ¶¶ 4-5.)

### B. Plaintiffs' FLSA Claim

When Plaintiffs began their relevant terms of employment, both the Brookview Center and the Gardens were owned and/or operated by non-parties Healthcare Ventures of America, LLC,

---

[1] Other facilities allegedly controlled by Defendants include the Autumn Court facility in Ottawa, Ohio; the Columbus Alzheimers Care Center in Columbus, Ohio; The Convalarium in Dublin, Ohio; Cridersville Healthcare Center in Cridersville, Ohio; The Gardens at Celina in Celina, Ohio; The Gardens at St. Henry in St. Henry, Ohio; The Gardens at Wapakoneta in Wapakoneta, Ohio; and Oak Grove Manor in Mansfield, Ohio.

[2] These "opt-in plaintiffs" include Teneatha Eaton, Julie Burd, Keonna Hutcherson, Raqul Derian, Rosa Hartman, Bettijo Kinney, and Ashley Switzer. (See ECF Nos. 24, 26-29, 32.) As discussed, two of these individuals—Bettijo Kinney and Julie Burd—have filed declarations in support of Plaintiffs' Motion for Conditional Certification. (*See* Declaration of Bettijo Kinney, ECF No. 20-2; Declaration of Julie Burd, ECF No. 20-2.)

2

Peregrine Health Services, Inc., and various other entities (collectively, "HVO"). Plaintiffs contend that HVO—and, later, Defendants—routinely deducted thirty minutes of compensable work time from their daily pay to account for meal breaks that they never actually took. (FAC, ECF No. 10 at ¶¶ 8, 13, 33-35.) And they allege (1) that this practice deprived them of statutorily owed overtime compensation; (2) that Defendants knew (or had sufficient reason to know) this was the case; and (3) that Defendants have continued to shortchange healthcare employees across the rest of the Facilities in the same manner. (*Id.* at ¶¶ 36-39.)

### C. Procedural History

On July 19, 2021, Plaintiffs, on behalf themselves and other "similarly situated" employees, brought suit against Defendants, under, *inter alia*, § 207(a)(1) of the FLSA (the "FLSA Claim"). (ECF No. 1.) Several months later, on October 7, 2021, Plaintiffs amended their complaint. (ECF No. 10.) Now, they move pursuant to § 216(b) of the FLSA to conditionally certify the following collective:

> All current and former hourly, non-exempt healthcare employees of Defendants who had a meal break deduction applied during any workweek in which they were paid for at least forty (40) hours of work, beginning three (3) years prior to the filing of this Motion [November 11, 2018] and continuing through the date of the final disposition of this case.

(Pl.'s Mot., ECF No. 20.)

## II.

Section 207 of the FLSA requires private employers to pay all non-exempt, hourly employees who work more than forty hours a week a rate of "one and one-half times" their regular pay rate for every additional hour they work. 29 U.S.C. § 207. If an employer fails to provide this overtime pay, its effected employees may collectively sue to recover it, so long as they are "similarly situated." 29 U.S.C. § 216(b).

In the Sixth Circuit, certification of a FLSA collective generally proceeds in two stages: conditional certification (also known as the "notice" stage) and final certification. *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012). At the first stage, district courts merely seek to determine whether the grounds for the movant's FLSA claim are plausible enough to warrant sending notice to potential members of his or her putative collective. *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *1 (S.D. Ohio Nov. 2, 2015). To meet this burden, the plaintiff must, at the very least, make a "modest factual showing" that he or she and the potential members of his or her putative collective "were victims of a common policy or plan that violated the [FLSA]." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006) (quoting *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)).

Because this "modest" showing often must be made before any discovery has occurred, courts usually steer clear of weighing the merits of an FLSA movant's claim. *See, e.g.*, *Waggoner v. U.S. Bancorp.*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (reiterating the notion that "a district court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility" at the conditional certification stage) (citation omitted). So too are they "fairly lenient" in assessing whether the movant has met his or her "modest" burden. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012) (quoting *Comer*, 454 F.3d at 547). Absent a particularly weak showing, these factors "typically" lead district courts to grant conditional certification. *Comer*, 454 F.3d at 547.

## III.

Defendants do not just contend that Plaintiffs have failed to shoulder the "modest" burden that conditional certification entails; they oppose this Court's use of the conditional certification framework entirely. They ask this Court, specifically, to adopt the United States Court of Appeals for the Fifth Circuit's newly minted "one-step" approach, which, as articulated in in *Swales v.*

4

*KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 440 (5th Cir. 2021), requires district courts to first (1) identify the "facts and legal considerations . . . material to determining whether a group of 'employees' is 'similarly situated,'" and (2) prescribe a limited discovery plan consistent therewith *before* determining whether certification—and, accordingly, the distribution of notice—is warranted. 985 F.3d at 441. Recognizing that the Sixth Circuit has taken the potential applicability of *Swales* up on interlocutory appeal, *see Holder v. A&L Home Care & Training Ctr.*, 6th Cir. Case No. 21-305/21-306, Defendants alternatively ask this Court to hold off on evaluating Plaintiffs' Motion for the time being.

Defendants are not the first party to ask this Court to go the *Swales* route. *See Jones v. Converse Elec., Inc.*, Case No. 2:21-cv-1830, 2021 WL 5027411, at *3 (S.D. Ohio Oct. 29, 2021). As before—and "like every other Sixth Circuit district court to have been so invited"—this Court again declines the invitation. *Id.* Its rationale for this is fairly straightforward: *Swales,* as both parties recognize, is not the current law of this circuit. Nor is its reasoning particularly applicable[3]—or, for that matter, all that persuasive.[4]

Accordingly, this Court will do what is has traditionally done: apply the two-step framework. And given the inherently time-sensitive nature of FLSA claims, *see* 7B Charles A. Wright *et al.*, *Federal Practice and Procedure* § 1807 (3d ed. 2022) (noting that "the statute of limitations for a plaintiff in a collective action will be tolled only after the plaintiff has filed a consent to opt in to the collective action"), the "broad remedial goal" of the FLSA, *Bradford v.*

---

[3] In *Swales*, the parties engaged in "significant discovery" before the plaintiffs moved to conditionally certify their putative FLSA collective. 985 F.3d at 438. That inherently rendered the Fifth Circuit more skeptical of the district court's decision not to address the merits of the plaintiffs' FLSA claim. *Id.* at 441. Here, by contrast, no discovery has occurred. To that end, the Court does not see much utility in trying to suss out the factual and legal contours of Plaintiffs' cause of action.

[4] Indeed, "while the historical use of the two-step process within this circuit is not dispositive of the issue . . . the undersigned has found the process to be much more effective than the *Swale*[*s*] court implies." *Manasco v. Best In Town, Inc.*, Case No. 2:21-cv-00381-JHE, 2022 WL 816469, at *6 n. 5 (N.D. Ala. Mar. 17, 2022).

*Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1077 (M.D. Tenn. 2015) (citation omitted), and the limited effect of conditional certification, the Court does not see a persuasive reason to wait any longer to do so.

## IV.

Defendants oppose conditional certification on two basic grounds. (ECF Nos. 21, 22.) Principally, they contend it is unwarranted because this Court has already conditionally certified Plaintiffs' putative FLSA collective in another lawsuit: *Shiflet v. Healthcare Ventures of Ohio, LLC*, Case No. 2:20-cv-3428-EAS-KAJ ("*Shiflet*"). They also, as noted, argue that Plaintiffs simply have not met the "modest burden" that conditional certification entails. To the extent this Court disagrees, Defendants argue that it should, at the very least, narrow the scope of Plaintiffs' putative FLSA collective to solely include "healthcare employees" whose injuries arose after July 1, 2020—the date Defendants contend HG assumed took control of the Facilities.

None of Defendants' arguments is persuasive. Plaintiffs' have met their "modest" burden, and their putative FLSA collective shall, at this juncture, remain unaltered.

**A. Defendants' Arguments Against Conditional Certification**

**1.** ***Shiflet*** **Does Not Preclude Conditional Certification**

Defendants contend there is no need to conditionally certify Plaintiffs' putative FLSA collective because the employees Plaintiffs seek to represent "are already included" in *Shiflet*. To understand this argument, some background is in order.

As noted, multiple entities—first HVO, then Defendants—have owned or operated the Facilities. *Shiflet* centers on HVO's tenure in command. Plaintiffs there, as here, claim that HVO failed to pay its healthcare employees "for all hours worked because of [an] automatic meal deduction policy." (*Shiflet*, ECF No. 1 at ¶¶ 30, 36.) Unlike here, however, the *Shiflet* plaintiffs have already obtained conditional certification—specifically, of the following FLSA collective:

6

> All current and former hourly, non-exempt healthcare* employees of [HVO] who . . . were unable to take an uninterrupted 30-minute meal break during any workweek that they worked at least 40 hours, during the three years preceding the filing of this Motion [August 18, 2017] and continuing through the final disposition of this case.
>
> *"Healthcare" employees includes Registered Nurses ("RNs"), Licensed Practical Nurses (LPNs")[sic], State Tested Nursing Assistants ("STNAs"), and other medical personnel providing direct care.

(Op. and Order, *Shiflet*, ECF No. 17.)

Plaintiffs here allege that Defendants "continued the same business," and "employed substantially the same workforces [and] supervisors, for the same jobs, under the same conditions, us[ing] the same equipment, and provided the same service[s]" as HVO once they assumed control of the Facilities. (*See* FAC, ECF No. 10 at ¶¶ 8, 13.) To that end, they seek to hold Defendants liable as "successors in interest" to HVO's unlawful conduct, as well as for Defendants' own alleged violations of the FLSA.

One question still lingers: when did HVO cede control of the Facilities to Defendants? Defendants, as discussed, assert that this transition point came on July 1, 2020. Plaintiffs, by contrast, do not offer a specific date, but do offer a pay stub which represents that HG was responsible for paying nursing employees like Ms. Miller around that time. (Pl.'s Ex. 1, ECF No. 1-1.) Strictly for the sake of argument, then, the Court will assume HG assumed control of the Facilities on July 1, 2020. That would mean Plaintiffs' putative FLSA class—which, as it stands, runs from November 11, 2018, to the resolution of Plaintiffs' FLSA Claim—overlaps in time with the *Shiflet* collective from November 11, 2018, to July 1, 2020.

Now, Defendants' argument. Defendants contend that the above-stated temporal overlap obviates the need to conditionally certify Plaintiffs' putative FLSA collective, as "the proposed class members in this case are already covered by the class conditionally certified in" *Shiflet*. (Holland Resp., ECF No. 21 at PageID #214.) But that is not true. Plaintiffs' putative FLSA

7

collective plainly extends to "healthcare employees" that Defendants *themselves* allegedly deprived of overtime compensation *after* July 1, 2020. Any injury that accrued from this unlawful activity does not fall within *Shiflet*'s scope.

But what about the "successor in interest" portion of Plaintiffs' FLSA Claim? Is that theory of liability precluded by *Shiflet*? If so, does that mean Plaintiffs' putative FLSA collective should be truncated to begin on July 1, 2020? Plaintiffs contend—and this Court agrees—that it is simply too early to answer these questions. In their view, addressing the viability of their "successor" liability claim at the final certification stage, after limited discovery has occurred, is the better call.

Plaintiffs' suggested route makes sense. "In the Sixth Circuit, 'the appropriateness of successor liability depends on whether the imposition of such liability would be equitable.'" *Clark v. Shop24 Global, LLC*, 77 F. Supp. 3d 660, 692 (S.D. Ohio 2015) (quoting *Cobb Contract Transp., Inc.*, 452 F.3d 543, 554 (6th Cir. 2006)). "[I]n the employment context," this inquiry generally requires courts to weigh "1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) the goals of federal policy, *in light of the particular facts of a case and the particular legal obligation at issue*." *Id.* (citation omitted) (emphasis added). This balancing test usually entails an analysis of numerous subfactors, including:

> (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same [facility]; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; [and] (7) whether the same jobs exist under substantially the same working conditions.

*Id.* (citation omitted).

The Court sees no persuasive reason to grapple with these factual issues before discovery has even begun.[5] *See Waggoner*, 110 F. Supp. 3d at 765. Thus, for now, it makes no call one way or the other on the issue of "successor" liability, choosing instead to reach the question at the final certification stage.

### 2. Plaintiffs Have Satisfied Their "Modest Burden"

Plaintiffs, in addition to their FAC, have submitted four sworn declarations in support of their Motion for Conditional Certification: one from Plaintiff Armstrong, one from Plaintiff Miller, and one, respectively, from opt-in plaintiffs Bettijo Kinney and Julie Burd.[6] (*See* Ex. B, ECF No. 20-2.) All four plaintiff-declarants aver, *inter alia*, that:

1. They were employed by HG on an hourly basis and worked 40 or more hours in one or more work week at an Ohio-based, HG-owned senior living community;

2. They are "aware that HG has a companywide policy of deducting 30 minutes from its hourly employees' daily hours worked for a meal break[;]"

3. As HG employees, they were "often unable to take a 30-minute, uninterrupted meal break" given (1) regular understaffing and (2) the constant need to tend to their residents;

4. HG provided its employees a "punch form" to report missed or interrupted meal breaks so as to avoid unwarranted pay deductions; and

---

[5] Defendants argue that "Plaintiffs and their counsel are seeking to double dip or even triple dip by seeking multiple recoveries in at least three different suits for the exact same alleged injury." (Holland Resp., ECF No. 22 at PageID #264-65.) The Court, to be clear, sanctions no such thing here. It merely holds that Plaintiffs have shown enough to distribute notice of their FLSA Claim. An individual is not automatically entitled to relief just because they receive notice of a FLSA cause of action. And to the extent any opt-in plaintiffs actually attempt to obtain double recovery for their injuries, Defendants are more than welcome to raise the issue at the final certification stage (or after).

[6] Mr. Kinney worked as an hourly Nursing Assistant at Defendants' Heatherdowns facility from July 2018 to September 2020, while Ms. Burd currently works as an hourly LPN supervisor at Defendants' McCrea Manor facility, where she has been employed for the better part of the last five years. (Kinney Decl., ECF No. 20-2, ¶ 5; Burd Decl., ECF No. 20-2, ¶ 3.)

9

    5. Even after they reported a missed or interrupted meal break, Defendants nevertheless applied a "meal deduction" to their daily pay.

(*See* Ex. B, ECF No. 20-2.)

Defendants reject these contentions, and argue that Plaintiffs have failed on multiple fronts to meet their "modest" factual burden. *See Comer*, 454 F.3d at 547. The Court, holding otherwise, addresses Defendants' arguments in turn.

    i.    <u>Defendants' "Rogue Supervisors" and "Insufficient Participation" Arguments</u>

Defendants assert that, at most, Plaintiffs have shown that "rogue supervisors" at four facilities did not adhere to Defendants' general policy of crediting missed meal breaks. (HG Resp., ECF No. 22 at PageID #265.) These "isolated incidents," Defendants contend, should not be imputed to the eight other Ohio-based senior living communities that they own and/or operate, especially given that only seven individuals "out of a potential class of 140" have opted into Plaintiffs' putative collective. (*Id.* at PageID #265-66.)

Defendants' attempt to wall off the rest of the Facilities is unavailing. As Plaintiffs observe, courts in this circuit traditionally do not require a FLSA plaintiff "to come forward with some threshold quantity of opt-in plaintiffs" to obtain conditional certification. *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011); *accord Hall v. U.S. Cargo & Courier Serv., LLC*, 299 F. Supp. 3d 888, 896 (S.D. Ohio 2018) ("Plaintiffs are not required to provide a showing of interest prior to conditional certification."). Nor is there any "magic number" of sworn declarations that a plaintiff must submit to prevail at the "notice stage." Indeed, on several occasions, this Court has found a single declaration to be enough. *See Smysers v. Ohio Mulch Supply, Inc.*, No. 2:17-cv-1110, 2019 WL 101905, at *3 (S.D. Ohio Jan. 4, 2019) (granting conditional certification on a single declaration); *Ford v. Carnegie Mgmt Servs., Inc.*, Case No. 2:16-cv-18, 2016 WL 2729700, at *6 (S.D. Ohio May 11, 2016) (same); *Sisson v. OhioHealth*

10

*Corp.*, Case No. 2:13-cv-517, 2013 WL 6049028, at *1 (S.D. Ohio Nov. 14, 2013) (same). This is largely due to the relative leniency of the conditional certification inquiry. *See Smysers*, 2019 WL 101905, at *3 (noting that the "fairly lenient" nature of the conditional certification analysis warranted in favor of finding the plaintiff's single declaration sufficient). It can also be accredited to the fact that the *contents* of a plaintiff's submitted declarations—not their number—ultimately speak to the existence of a "single, FLSA-violating policy" or practice.

Here, nursing employees of four different senior-living facilities all claim (1) Defendants subjected them (and other "healthcare employees") to the same broken meal break reporting system; and (2) that this system ultimately led Defendants to wrongfully deprive them of overtime compensation for taking breaks that never actually occurred. (*See* Ex. B, ECF No. 20-2.) The fact these alleged FLSA violations occurred at multiple facilities, contrary to Defendants' argument otherwise, suggests they all stemmed from a "centralized" policy or practice—namely, an ineffective "missed meal break" reporting process. *See Jowers v. NPC Int'l, Inc.*, Case No. 13-1036, 2016 WL 7238963, at *6 (W.D. Tenn. Dec. 13, 2016). And that, for purposes of conditional certification, is enough. *See, e.g.*, *id.* (citation omitted) (finding that the plaintiffs had made a "modest factual showing" that they were subjected to a "common policy or practice that violated the FLSA" when "numerous delivery drivers from restaurants located in multiple locations made similar allegations," which tended to show that the "violations were not the result of 'rogue managers' but rather were the result of centralized decision-making.").

      ii.      <u>Defendants' Post-July 25, 2021 Argument</u>

Defendants, taking a narrower approach, also contend that Plaintiffs have not factually substantiated that their collective should extend beyond July 25, 2021—the date Holland allegedly began to administer HG's payroll. (Holland Resp., ECF No. 21 at PageID #215.) Defendants note, specifically, that of Plaintiffs' four declarants, only one—Ms. Burd—claims to have worked at one of the Facilities after that point. (*Id.*) And even then, they assert, Ms. Burd has not sufficiently articulated that Defendants violated the FLSA after July 25, 2021. (*Id.*) Defendants point to (1) the declaration of Paul Adamic, Holland's Vice President of Finance, and (2) Ms. Burds' payroll records—which supposedly show that she never reported missing a meal break after July 25, 2021—to support their argument. (*Id.* at PageID #221.)

As discussed, arguments which strike at the merits of Plaintiffs' FLSA Claim will not carry weight at this early stage. *See Waggoner*, 110 F. Supp. 3d at 765. Only those which attack the facial sufficiency of Plaintiffs' allegations and affidavits—not their accuracy—will be considered. Almost all of Defendants' aforementioned points (and the evidentiary submissions those points subsist upon) violate this principle.[7] The only part which passes this threshold test is Defendants' line of argumentation related to the sufficiency of Ms. Burd's declaration. So, that is what the Court will focus its analysis on. The rest it shall save for another day.

Ms. Burd, to be precise, alleges that she has had two stints of employment at the McCrea Manor, the latter of which apparently continues to this day. (Burd Decl., ECF No. 20-2 at ¶ 3.) During her first stretch of employment, which lasted from August 2017 to March 2021, Ms. Burd

---

[7] Defendants attempt to circumvent this conclusion by asserting that their "submissions of the Adamic Declaration and [Ms. Burd's] payroll records" are only "directed" at the sufficiency of Plaintiffs' submissions, rather than "the merits of the dispute." (ECF No. 22 at PageID #221.) But this framing is belied by Defendants' own line of argumentation, which clearly attacks the substance of Plaintiffs' FLSA Claim. (*See id.*) (arguing that Ms. Burd's payroll records "demonstrate that Holland applies the automatic meal deduction in a manner consistent with the FLSA").

acknowledges that "the entity that paid [her] changed from [HVO] to [HG]." (*Id.* at ¶ 4.) She also states that, when she re-joined the McCrea Manor in June 2021, she was "informed that Holland" now owned the facility.[8] (*Id.* at ¶ 5.) Despite this alleged change in control, Ms. Burd claims that the "terms and conditions" of her employment have remained the same. (*Id.* at ¶ 5.) And she does not stop there. Rather, she specifically explains that those "terms and conditions" include a "companywide" meal break deduction policy which, due to an ineffective reporting process, ultimately led Defendants to deprive her (and her colleagues) of overtime compensation on numerous occasions. (*Id.* at ¶¶ 9-14.)

These contentions, taken as a whole, are far from "conclusory." And they are not only enough to establish a "factual nexus" between Ms. Burd and the rest of Plaintiffs' putative FLSA collective, but to extend that "nexus" beyond July 25, 2021. *See O'Neal v. Emery Federal Credit Union*, No. 1:13-CV-22, 2013 WL 4013167, at *8 (S.D. Ohio Aug. 6, 2013). For these reasons, the Court finds conditional certification of Plaintiffs' putative FLSA collective appropriate.

**B. Alternative Arguments**

Defendants argue that, to the extent this Court is inclined to grant conditional certification, it should at the very least narrow Plaintiffs' putative FLSA collective to (1) begin on July 1, 2020, (rather than November 11, 2018); (2) include only those "healthcare employees" who worked (or work) at the four facilities implicated in Plaintiffs' submitted declarations; and (3) include only those employees who (a) "worked through lunch with the knowledge of their supervisor[;]" (b) reported missing a meal break; and (c) "did not get paid for the time spent working through lunch."

---

[8] As Defendants note, "Ms. Burd cannot be expected to know the relationship between HG and Holland." (Holland Resp., ECF No.21, at PageID #220 n.3.) Thus, even if, as Defendants assert, she was under the wrong impression as to Holland's specific role in the operation of McCrea Manor, such is of little consequence. (*Id.*)

Defendants first and second requests effectively repackage their initial arguments against conditional certification. And they fare just as well. That is, for the reasons discussed above, the "lookback" period for Plaintiffs' putative FLSA collective may, for now, begin on November 11, 2018,[9] and notice of Plaintiffs' FLSA Claim may be sent to qualifying employees at all of the Facilities—not just the four locations that employed (or employ) Plaintiffs or their co-parties.

That leaves Defendants' third request, which, as elaborated below, is not well taken.

**1. Defendants' Proposed "Knowledge" Requirement**

Defendants correctly note that "an employee must show that [his or her] employer knew or should have known that he [or she] was working overtime" to prevail on a FLSA claim. (Holland Resp., ECF No. 21 at PageID #223-24) (quoting *White*, 699 F.3d at 876 (citation omitted)); *see also Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) ("Thus, if an 'employer knows *or has reason to believe*' that an employee 'is continuing to work' in excess of forty hours a week, 'the time is working time' and must be compensated at time-and-a-half, even if the extra work performed was 'not requested' or even officially prohibited.") (quoting 29 C.F.R. 785.11) (emphasis added). But in asking this Court to narrow Plaintiffs' putative FLSA collective to "only those employees who worked through lunch with the knowledge of their supervisor," Defendants ignore their own quote—namely, the "should have known" portion.

Put differently, Plaintiffs need not demonstrate that Defendants actually knew they "worked through lunch" to prevail on their FLSA Claim; "constructive" knowledge works all the same. *See Craig*, 823 F.3d at 388-89. Accordingly, the Court declines to adopt Defendants' "actual knowledge" proposal.

---

[9] Again, Defendants are welcome to make the same arguments regarding Plaintiffs' "successor" liability theory at the final certification stage.

14

**2. Defendants' Other Suggested Alterations**

Defendants also ask this Court to narrow the definition of Plaintiffs' collective to only those "healthcare employees" who (1) "requested a time variance for working through lunch;" and (2) did not get paid for the time they spent working during their lunch break. These requests, too, are inapposite. The only conceivable way for Plaintiffs to identify every "healthcare employee" who submitted a "time variance" (or "missed meal break" report) is through Defendant's timekeeping records—records which Plaintiffs suggest do not fully account for every "time variance" that they (and others) submitted. (*See* FAC, ECF No. 1 at ¶¶ 37, 86) (noting that Defendants did not provide an "effective process for reporting" missed meal breaks and "fail[ed] to properly maintain accurate records" of their employees' working hours). This Court, for obvious reasons, is hesitant to tie Plaintiffs' distribution of notice to a potentially incomplete record. Nor does it see any reason to cabin Plaintiffs' collective to "healthcare employees" who "did not get paid for the time spent working through lunch" when it is already narrowed to those who, *inter alia*, "had a meal break deduction applied" to their weekly pay. Thus, the scope of Plaintiffs' putative collective shall remain as is.

**C. Notice Arguments**

Defendants propose three revisions to Plaintiffs' notice distribution process. In light of the above, the first of these suggestions—that Plaintiffs' notice form "be revised to reflect" Defendants' narrower class definition—need not be addressed. With that in mind, the Court turns to Defendants two remaining proposals.

**1. Opt-In Period**

The parties disagree on the appropriate time-period that Plaintiffs' notice recipients should be allotted to join this case. Plaintiffs ask for ninety days, while Defendants submit that forty-five

days is "more appropriate." Neither party offers a concrete reason as to why the time periods they respectively propose should apply, although Plaintiffs note that "this Court has frequently approved 90 days as an appropriate length of time for putative collective members to opt in to FLSA collective actions." (Pl.'s Reply, ECF No. 30 at PageID #350.) They also (correctly) note that limiting the notice period to forty-five days would not "moot or vitiate" the claims of any "healthcare employee" who fails to opt-in—meaning, in turn, that another lawsuit could be filed against Defendants "for no better reason than that the opt-in period in this lawsuit" was too short. (*Id.* at PageID #351.)

Plaintiffs' arguments carry the day. Defendants have made clear that they oppose handling this litigation in piecemeal fashion. Shortening the opt-in period for this case would only hamper that goal. So, the Court will err on the side of inclusivity. Plaintiffs' ninety-day opt-in deadline stands.

### 2. *Shiflet* Paragraph

Defendants propose that the following alterations be made to the last paragraph on the first page of Plaintiffs' proposed notice form:

> Please understand that **if you have remained employed at one of the Facilities identified above after July 1, 2020,** you are **not** included in this case if you joined *Shiflet v. Healthcare Ventures of Ohio, LLC et al.*, Case No. 2:20-cv-3428, unless you return~~ed~~ a consent form to join this case. If you would like to participate in this case, you must return a consent form regardless of if you previously returned a consent form in *Shiflet*.

The Court sees no need to specify July 1, 2020, as a relevant date, given that Plaintiffs' FLSA collective, for now, extends to "healthcare employees" injured on or before November 11, 2018. Nevertheless, the Court is mindful of the fact that at least some of Plaintiffs' notice recipients may have already joined *Shiflet*. And to be clear, this Court will not permit any individual who obtains relief in that lawsuit (or any other related litigation) to use this case to obtain recovery for

16

the same exact injury. Accordingly, the Court **ORDERS** the parties to submit an agreed-upon notice form within the next **FOURTEEN (14) DAYS** which expresses that idea. If the parties are unable to reach an agreement, they shall each submit a status report no longer than one page that explains the basis of their impasse. No further briefing will be entertained on the issue. The following example language may be used as a starting point:

> **NOTE**: If you have joined *Shiflet v. Healthcare Ventures of Ohio, LLC, et al.*, Case No. 2:20-cv-3428, and would like to participate in this case, please be aware of the following:
>
> (1) Should you ultimately receive overtime backpay by participating in the *Shiflet* case, you will **not** be eligible to recover compensation for the **same exact overtime loss** in this lawsuit. But, if you believe that you have been **separately** injured by the defendants in this case, you *may* be eligible for backpay as a member of this lawsuit, even if you receive compensation through *Shiflet*.
>
> (2) If you would like to participate in this case, you **must** return a consent form regardless of whether you returned a consent form in *Shiflet*.

## V.

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Conditional Certification (ECF No. 20), **APPROVES** Plaintiffs' limited discovery plan (*id.*), and **ORDERS** the parties to submit a revised notice form in the manner set forth above.

This case is to remain open.

**IT IS SO ORDERED.**

**7/7/2022**                                                           s/Edmund A. Sargus, Jr.
**DATE**                                                                **EDMUND A. SARGUS, JR.**
                                                                               **UNITED STATES DISTRICT JUDGE**